**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christina Renowden,<br><br>    Plaintiff,<br><br>v.<br><br>Prudential Insurance Company of America, *et al.*,<br><br>    Defendants. | No. CV-18-03047-PHX-JJT<br><br>**ORDER** |

At issue is Plaintiff Christina Renowden's Motion to Vacate Scheduling Order and Set a Scheduling Conference (Doc. 24, Mot.), to which Defendant Prudential Insurance Company of America ("Prudential") filed a Response (Doc. 25, Resp.), and Plaintiff filed a Reply (Doc. 34, Reply).

**I.    BACKGROUND**

Plaintiff, a former employee of Walgreen Company, was enrolled in an employee insurance plan. (Doc. 1, Compl. ¶ 15.) Defendant was the insurer and claims administrator under the policy. (Compl. ¶ 8.) Plaintiff alleges that she became disabled in 2016 and had to stop working. (Compl. ¶ 17.) Soon after, Plaintiff filed a claim for the Group Life Insurance Premiums Waiver benefit under her policy, seeking life insurance coverage free of premiums due to her disability. (Compl. ¶ 19.) Defendant denied Plaintiff's claim. (Compl. ¶ 25.) Around the same time, Plaintiff filed a long-term disability claim under a group long-term disability policy also insured and administered by Defendant, and that claim was approved. (Compl. ¶¶ 33–35.)

On September 27, 2018, Plaintiff filed a Complaint seeking review, pursuant to the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(e)(1) and § 1132(f), of the decision to deny her benefits under her Policy's Life Insurance Premiums Waiver benefit. As is the Court's policy, it issued a Rule 16 Scheduling Order in an Action for Review on an Administrative Record ERISA Case. (Doc. 18.) This version of the standard Rule 16 Scheduling Order contemplates the traditional ERISA case, where the dispute focuses on the administrative record and additional discovery is not required. Plaintiff now moves to vacate the Scheduling Order on the basis that "the Court misstate[d] Plaintiff's cause of action as one for the review of an administrative decision" and "because discovery is permitted in this circuit to allow the Court to assess whether . . . any conflict of interest . . . improperly influenced Defendant's decision to deny the claim." (Mot. at 2.)

## II. LEGAL STANDARD

In ERISA cases, whether evidence outside the administrative record may be admitted depends on the whether the court reviews the benefits decision under an abuse of discretion or *de novo* standard. *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006). "[I]n general, a district court may review only the administrative record when considering whether the plan administrator abused its discretion, but may admit additional evidence on *de novo* review." *Id.* at 970.

As a default, the Ninth Circuit applies a *de novo* review, and in order to trigger "the more lenient abuse of discretion, the plan must unambiguously provide discretion to the administrator." *Abatie*, 458 F.3d at 963. In deciding whether the plan administrator has discretion, "[t]he essential first step of the analysis . . . is to examine whether the terms of the ERISA plan unambiguously grant discretion to the administrator." *Id.* While "[t]here are no 'magic' words that conjure up discretion . . . the Supreme Court has suggested that a plan grants discretion if the administrator has the 'power to construe disputed or doubtful terms' in the plan." *Id.* (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)). The Ninth Circuit has held that wording "granting the power to interpret plan terms and to make final benefits determinations" is sufficient to confer discretion on the

administrator. *Id.* But plans "are insufficient to confer discretionary authority on the administrator when they do not grant any power to construe the terms of the plan." *Id.* at 964.

Review under the abuse of discretion standard is limited to the evidence in the administrative record. *Id.* at 970 ("[I]n general, a district court may review only the administrative record when considering whether the plan administrator abused its discretion"). However, a potential conflict of interest—for example, where the insurer both funds and administers the plan—may be evaluated through evidence outside the administrative record. When a plaintiff alleges a conflict, a "court must decide how much weight to give" it, and in doing so, "may consider evidence beyond that contained in the administrative record . . . to determine whether a conflict of interest exists that would affect the appropriate level of judicial scrutiny." *Id.* This extrinsic evidence may be used "to decide the nature, extent, and effect on the decision-making process of any conflict of interest; the decision on the merits, though, must rest on the administrative record once the conflict (if any) has been established." *Id.*

In short, while evidence outside the record may be permitted, its use must be limited to determining the existence and extent of a conflict of interest. Once that determination is made, the court must return to its narrow review of the record alone, and the abuse of discretion standard will allow the court to consider in its analysis the impact of any conflict of interest. *Id.* at 968 ("A straightforward abuse of discretion analysis allows a court to tailor its review to all the circumstances before it.") (citing *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1161 (8th Cir. 1998) ("The abuse of discretion standard is inherently flexible, which enables reviewing courts to simply adjust for the circumstances.")).

On the other hand, when a plan confers no discretion on the administrator, a court will review the decision *de novo*. *Id.* at 969. Under this standard, the court is permitted to examine evidence outside of the administrative record. *Id.* at 970 ("While under an abuse of discretion standard our review is limited to the record . . . this limitation does not apply to *de novo* review.") (quoting *Jebian v. Hewlett-Packard Co. Emp. Benefits Org. Income*

*Prot. Plan*, 349 F.3d 1098, 1110 (9th Cir. 2003)). Courts are not required to accept extrinsic evidence and should review it only "when circumstances clearly establish that additional evidence is necessary to conduct an adequate *de novo* review." *Jebian*, 349 F.3d at 1110 (quoting *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 944 (9th Cir. 1995)). Courts must therefore examine each proffered item of evidence to "determine whether each piece of extrinsic evidence [is] necessary" for an adequate review. *Opeta v. Nw Airlines Pension Plan for Contract Emps.*, 383 F.3d 1211, 1218 (9th Cir. 2007).

The Ninth Circuit has provided "a non-exhaustive list of exceptional circumstances where introduction of evidence beyond the administrative record could be considered necessary." *Opeta* 383 F.3d at 1217. The list, adopted from a Fourth Circuit decision, includes the following circumstances:

> claims that require consideration of complex medical questions or issues regarding the credibility of medical experts; the availability of very limited administrative review procedures with little or no evidentiary record; the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts; instances where the payor and the administrator are the same entity and the court is concerned about impartiality; claims which would have been insurance contract claims prior to ERISA; and circumstances in which there is additional evidence that the claimant could not have presented in the administrative process.

*Id.* (citing *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1025 (4th Cir. 1993)).

### III. ANALYSIS

Here, the parties agree that the Court should review the benefits decision under a *de novo* standard. (Mot. at 3; Resp. at 2.) As outlined above, *de novo* review allows the Court to grant discovery in certain limited circumstances. Plaintiff asserts two of those circumstances are applicable in her case. First, Plaintiff alleges a structural conflict of interest because Defendant both funds the plan and administers claims. (Mot. at 3.) Plaintiff further argues that "Defendant's third-party vendor it retained, who in turn, retained the reviewing medical professionals that reviewed the claim for Defendant, were all conflicted due [to] their relationship(s) with Defendant, and the disability insurance industry." (Mot. at 3.) In her Reply, Plaintiff classifies this alleged conflict of interest as an issue of

credibility that may merit discovery under the *Opeta* exception for "issues regarding the credibility of medical experts." (Reply at 4) (claiming that the doctors who reviewed her claim "are not independent, not credible and are biased").

Both of Plaintiff's arguments give rise to specific instances identified in *Opeta* where discovery is appropriate. But Defendant argues in response that such discovery is not "necessary to conduct an adequate *de novo* review of the benefit decision," as required by *Opeta*. (Resp. at 3.) Defendant acknowledges Plaintiff's concern that it operates under a structural conflict of interest but points out that the existing "administrative record shows . . . that [Defendant] insures the [] benefits at issue and decides claims for [the] benefits under the Plan," and insists no further evidence on the issue is necessary. (Resp. at 4.) Under Defendant's view, "the administrative record contains sufficient information for this Court to evaluate the existence and influence of any conflict of interest." (Resp. at 4.)

While the Court acknowledges that evidence of the relationship that typically gives rise to a structural conflict is indeed present in the administrative record, the Court remains unconvinced that the record alone will help it understand the "influence of any conflict of interest." Defendant concedes that it both funds and administers benefits but does not concede that such a structure creates an inherent conflict of interest. To do so would surrender any defense to Plaintiff's claims. Thus, the Court needs to examine evidence that will either help prove or disprove the pervasiveness of the alleged conflict. Thus, the Court will grant Plaintiff's Motion to Vacate the Scheduling Order.[1]

**IT IS THEREFORE ORDERED** granting Plaintiff's Motion to Vacate the Scheduling Order and Set a Scheduling Conference (Doc. 24).

**IT IS FURTHER ORDERED** vacating the ERISA Case Scheduling Order (Doc. 18).

---

[1] In granting Plaintiff's Motion, the Court need not address Plaintiff's argument that ERISA cases are not reviews of an agency decision and thus their records are "actually an insurance company's claims file, not an administrative record as 'administrative' is used in Rule 26." (Mot. at 6.)

**IT IS FURTHER ORDERED** that parties will jointly submit a proposed case scheduling order to the Court by July 9, 2019, at which point the Court will determine whether a scheduling conference is necessary.

Dated this 26th day of June, 2019.

*[signature]*
Honorable John J. Tuchi
United States District Judge